IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN MCGRATH | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-1248 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                                              FEBRUARY 28, 2012

       Upon consideration of the brief in support of request for review filed by plaintiff (Doc. No. 7), defendant's response and plaintiff's reply thereto (Doc. Nos. 8 & 10), I make the following findings and reach the following conclusions:

       1.    On January 27, 2009, Brian McGrath protectively filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, alleging an onset date of January 1, 2002. (Tr. 89-91). Throughout the administrative process, including an administrative hearing held on March 2, 2010, before an ALJ, McGrath's claims were denied. (Tr. 14-19; 24-42; 45-49). After the Appeals Council denied review, pursuant to 42 U.S.C. § 405(g), McGrath filed his complaint in this court on March 23, 2011. (Tr. 1-5; Doc. No. 1).

       2.    In her March 19, 2010, decision, the ALJ concluded, *inter alia*, that: (1) McGrath had severe depressive disorder, generalized anxiety disorder, and degenerative disc disease of the lumbar spine; (2) his impairments did not meet or equal a listing; (3) he had the residual functional capacity ("RFC") to perform up to light work with a sit/stand option, no more than occasional bending or stooping, routine one to two step job tasks, and no more than limited interaction with coworkers and the general public; (4) there were jobs existing in significant numbers in the national economy that he could perform, and (5) McGrath was not disabled. (Tr. 16 Findings 2, 3, & 4; 18 Finding 8; 19 Finding 9).

       3.    This Court has plenary review of legal issues, but it reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would

have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

   4. McGrath raises four arguments in which he alleges that the determinations by the ALJ were legally insufficient or not supported by substantial evidence. These arguments are addressed below.  However, upon independent consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

   A. McGrath first contends that the ALJ failed to evaluate the physical assessment of Dr. Yelena Yachmenyova, a state agency examining physician.  Specifically, McGrath takes issue with the ALJ's RFC conclusion that he could perform light work when Dr. Yachmenyova concluded that he could frequently lift and carry only ten pounds.[1]  (Tr. 210).  I first note that since light work only requires frequent lifting and carrying of ten pounds (and occasional lifting of twenty pounds), the ALJ's RFC assessment and Dr. Yachmenyova's assessment appear to be fully compatible.  20 C.F.R. § 416.967(b).  Nonetheless, as discussed below, even if the ALJ's RFC assessment was not in perfect accord with Dr. Yachmenyova's assessment, it would still be legally sufficient.

   Contrary to McGrath's argument, the ALJ gave adequate consideration to Dr. Yachmenyova's assessment.  The ALJ remarked that Dr. Yachmenyova's assessment was fairly unremarkable and showed full motor strength in McGrath's extremities, good range of motion in his lumbar spine, and that he was neurologically intact.  (Tr. 18; 205-11).  The ALJ also noted that there was no aggressive medical treatment for McGrath's lower back and that many of his office visits were for routine care unrelated to his back impairment. (Tr. 18).  It is also fairly clear that Dr. Yachmenyova based her conclusion that McGrath could lift and carry ten pounds frequently on his own subjective narrative.  (Tr. 206).  However, the ALJ specifically concluded that McGrath's testimony regarding the intensity and persistence of his physical symptoms was not well-supported.  (Tr. 18).  Although there is very little in the record showing any significant physical impairments, the ALJ gave McGrath "all benefit of the doubt", accepting his testimony that his back pain increased with sitting and postural movements, and incorporated such limitations into the RFC.  (Tr. 16 Finding 4;18).

   The ALJ's determination that McGrath could perform modified light work is also legally sufficient.  The RFC determination is an administrative finding reserved for the ALJ.  20 C.F.R. § 416.927(e).  It is not necessary for the ALJ to accept any particular RFC assessment in the record.  Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003).  Here, the ALJ articulated the medical evidence of McGrath's back impairment and gave sufficient reasoning for her conclusion that McGrath could perform modified light work.  Lastly, even if the evidence had not supported the ALJ's conclusion on this issue, many of the jobs that the VE testified would meet McGrath's RFC were sedentary jobs, requiring the lifting of no more than ten pounds.  (Tr. 36-37); 20 C.F.R. § 416.967(a).  As a result, there is no merit to this argument.

---

  [1] Dr. Yachmenyova did not opine on how much weight McGrath could occasionally lift and carry.

B.      Second, McGrath argues that the ALJ failed to add to his RFC assessment the findings of Dr. Marvin Feingenberg, a consultative examiner, that McGrath was "unable to respond appropriately to work pressures in a usual work setting and unable to respond appropriately to changes in the routine." (Tr. 201). In formulating the RFC and hypothetical question to the vocational expert ("VE"), the ALJ is required to include limitations credibly established by medical evidence, but not every limitation alleged by the claimant. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Ramirez v. Barnhart, 372 F.3d 546, 554-55 (3d Cir. 2004). The ALJ did summarize Dr. Feingenberg's assessment, but did not specifically discuss why she did not accept these two findings from Dr. Feingenberg or incorporate them into the RFC. (Tr. 17). The ALJ also summarized the treatment notes from the Northeast Community Mental Health Clinic, and the state agency mental RFC assessment and psychiatric review technique from Dr. John Grutkowski. (Id.). Ultimately, the ALJ concluded that the assessments of Drs. Feingenberg and Grutkowski were entitled to great weight to the extent that they were consistent with McGrath's treatment notes and self reported activities which failed to show great restrictions in functional limitations. (Tr. 17-18). After reviewing the ten years of treatment notes from the Northeast Community Mental Health Clinic, along with the other record evidence, I conclude that the ALJ's assertion that McGrath's mental impairments did not produce exceptionally strong functional limitations was supported by substantial evidence. See (Tr. 129-196, 197-201; 202-04; 212-24; 225-58; 288-321; 443-76).

As noted by the Third Circuit, "an administrative decision should be accompanied by a clear and satisfactory explanation of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704-705 (3d Cir. 1981). While ideally the ALJ should have specifically noted why she rejected these two limitations, I find, based on the above, that she sufficiently explained why she was rejecting any potentially work-preclusive limitations, including the two at issue from Dr. Feingenberg. Moreover, during the hearing, McGrath's counsel specifically asked the VE whether the jobs to which he had testified could be performed by someone who was unable to deal with work pressures or changes in work routine. (Tr. 39-40). The VE specifically testified that: (1) the jobs at issue were non-pace jobs; (2) they were objectively low stress jobs; and (3) that while there were occasional minor changes in routine, the jobs were repetitive and rote. (Tr. 38-41). As a result, even if the ALJ should have added to the RFC limitations associated with work pressures or stress and changes in the routine, her error would have been harmless.[2] Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case). Therefore, this argument must also fail.

C.      Third, McGrath alleges that the ALJ failed to properly evaluate whether his combined impairments equaled a listing at step three of the sequential evaluation process. The ALJ's step three analysis is arguably not ideal. She simply states that "[f]or the reasons set forth below, [McGrath's] impairments have not resulted in the degree of functional

---

[2] This analysis similarly applies to McGrath's argument that the ALJ failed to acknowledge that S.S.R. 85-15 requires the RFC to include any limitations created by an individual's response to work stress.

loss required of the [listings]." (Tr. 16). I recognize that an ALJ may not baldly conclude that the combination of a claimant's impairments do not meet or equal an impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). Instead, the ALJ must provide sufficient reasoning for her decision so that the decision is capable of "meaningful judicial review." (Id.). However, an ALJ is not required to use particular language or adhere to a particular format when conducting her step three analysis. Jones v. Barnhart, 364 F.3d 501, 504 -505 (3d Cir. 2004). An ALJ's decision, read as a whole, may provide adequate reasoning to support her step three decision. Id.

Here, the ALJ specifically directed the reader to review the reasoning for her step three determination found later in the decision. (Tr. 16). Such a review shows that the ALJ considered McGrath's testimony, reviewed the relevant evidence of his mental and physical impairments and explained the weight given to the various sources. (Tr. 17-18). The ALJ also explicitly stated that she gave great weight to, *inter alia*, Dr. Grutkowski's psychiatric review technique form wherein Dr. Grutkowski compared McGrath's mental impairments to listings 12.04, 12.06, and 12.09. (Tr. 17; 212-24). As a result, I conclude that the ALJ's decision provides sufficient explanation for her step three determination and McGrath's argument to the contrary is unsuccessful. See Jones, 364 F.3d at 504-505; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 (3d Cir. 2007).

      D.     Finally, McGrath claims that the ALJ should not have rejected the interrogatories and medical assessment of ability to do work-related mental activities ("mental assessment") filled out by his treating psychiatrist, Dr. Christos Ballas, and his treating psychotherapist, Fernando Rivas, based solely on their treatment notes from the Northeast Community Mental Health Clinic showing relative stability. Dr. Ballas and Mr. Rivas concluded on these two forms that McGrath met listing 12.04 since 2001 and had many marked or extreme limitations in his ability to perform mentally related work tasks.[3] (Tr. 437-42). Contrary to McGrath's claim, the ALJ did not reject these documents based merely on treatment notes showing that McGrath was stable. The ALJ concluded that the treatment notes from Dr. Ballas' facility did not support the very severe findings found in the interrogatories and mental assessment and instead showed, *inter alia*, fairly unremarkable mental status exams, that McGrath's mood was mostly stable, that he had appropriate affect, and had no abnormalities in his speech, thought process, or thought content. (Tr. 17-18). The ALJ also noted that his treatment consisted only of medication management and monthly individual therapy sessions and that there was no evidence of psychiatric hospitalization. (Tr. 17). The ALJ similarly concluded that Dr. Ballas' and Mr. Rivas' opinions in the interrogatories and mental assessment were

---

[3] Specifically, they found extreme limitations (meaning no useful ability to function) in the areas of: dealing with the public, interacting with supervisors, dealing with work stresses, maintaining attention and concentration, relating predicably in social situations, and demonstrating reliability; and marked limitations (meaning very significant limitations) in the areas of: using judgment, understanding, remembering, and carrying out complex job instructions, detailed job instructions, and simple job instructions, and behaving in an emotionally stable manner. (Tr. 439-41).

contrary to the opinions of Drs. Feingenberg and Grutkowski and McGrath's self reported activities of daily living. (Tr. 17-18).

After reviewing the record, I conclude that there is indeed substantial evidence contradicting Dr. Ballas' and Mr. Rivas' findings in the interrogatories and mental assessment, including their treatment notes and the opinions of Drs. Feingenberg and Grutkowski. (Tr. 129-96; 197-201; 202-04; 212-24; 225-58; 288-321; 443-76). When a conflict in the evidence exists, the ALJ may choose whom to credit but must give reasons for her choices. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Similarly, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). Here, the ALJ discussed the evidence and gave adequate reasons for why she rejected the rather extreme interrogatories and mental assessment.[4] As a result, I find that the ALJ's conclusion was based upon substantial evidence.

5.  After carefully reviewing all of the arguments and evidence, I find that the ALJ's conclusion that McGrath was not disabled was legally sufficient and supported by substantial evidence. As a result, McGrath's request for relief must be denied and the decision must be affirmed.

An appropriate order follows.

---

[4] Moreover, check-box forms such as the mental assessment are "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Their weakness is exemplified by Dr. Ballas' response to Section II, Question four where it is clear that he did not read the question that was being asked. Instead of describing limitations and listing the supportive findings as the question required, he merely placed a check mark in what would have been the "marked" column, if that had been an appropriate response. (Tr. 441).